Argued and submitted January 14, judgment of the Tax Court affirmed
April 10, 1997

# William W. SHATZER
## and Lois A. Shatzer,
### *Respondents,*

*v.*

# DEPARTMENT OF REVENUE,
## State of Oregon,
### *Appellant.*

### (OTC 3807; SC S43152)

934 P2d 1119

Joseph A. Laronge, Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs was Theodore R. Kulongoski, Attorney General.

William W. Shatzer, respondent *pro se*, argued the cause for respondents. With him on the brief was Lois A. Shatzer, respondent *pro se*.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Graber, and Durham, Justices.**

VAN HOOMISSEN, J.

---

** Kulongoski, J., did not participate in the consideration or decision of this case.

## VAN HOOMISSEN, J.

The Department of Revenue (the department) appeals a decision of the Oregon Tax Court granting taxpayers' motion for summary judgment. The Tax Court concluded that Article XI, section 11b, of the Oregon Constitution[1] (section 11b), a voter-approved property tax limitation, requires that the assessed value of taxpayers' property reflect changes in the condition of the property that occur after July 1. *Shatzer v. Dept. of Rev.*, 13 OTR 436, 440-41 (1996). We affirm.

The subject property is taxpayers' personal residence. The assessed value of the property on July 1, 1993, was $198,500, with $56,000 allocated to land and $142,500 allocated to improvements. On June 15, 1994, two weeks before the end of the 1993-94 tax year, the house was extensively damaged by fire. After the fire, only the foundation, exterior walls, and the roof of the house remained. Taxpayers and the assessor agreed that the real market value of the property after the fire was $103,000.

Pursuant to ORS 309.100(2),[2] taxpayers appealed the assessed value to the Multnomah County Board of Ratio Review (board), arguing that the assessed value of their property should be reduced to $103,000 for the 1993-94 tax year in the light of the fire damage. The board dismissed taxpayers' petition on the ground that it had no jurisdiction to reduce the assessment based on a fire.

Taxpayers then appealed to the department, arguing that section 11b(2)(a) (defining "real market value")[3]

---

[1] Article XI, section 11b, was added to the Oregon Constitution pursuant to a voter initiative (Ballot Measure 5) approved on November 6, 1990.

[2] ORS 309.100(2) provides, in part:

"The owner or an owner of any taxable property * * * may petition the board of ratio review for reduction of the real market value of property because of changes in the real market value of the property occurring after July 1 and on or before June 30 of any tax year."

[3] Article XI, section 11b(2)(a), provides:

" 'Real market value' is the minimum amount in cash which could reasonably be expected by an informed seller acting without compulsion, from an informed buyer acting without compulsion, in an 'arms-length' transaction during the period for which the property is taxed."

required that their property be reassessed at \$103,000 for the 1993-94 tax year as the "minimum amount" in cash for which it could have been sold in an "arms-length" transaction during that tax year. The department rejected that argument, ruling that ORS 308.205(1) (statutory definition of "real market value")[4] establishes a date certain, the date of assessment, for the determination of real market value which does not allow for readjustment for casualty damage affecting the property's market value, and that that provision does not offend the definition of "real market value" in section 11b(2)(a). The department further ruled that ORS 308.425,[5] which provides for proration of taxes because of fire damage, was taxpayers' only statutory remedy. The department further found that the statute was consistent with the section 11b definition of real market value and denied taxpayers' claim. Taxpayers appealed to the Tax Court.

The Tax Court granted taxpayers' motion for summary judgment, finding that the constitutional definition of real market value in section 11b required that the assessed

---

[4] ORS 308.205(1) provides:

"Real market value of all property, real and personal, *as the property exists on the date of assessment,* means the minimum amount in cash which could reasonably be expected by an informed seller acting without compulsion from an informed buyer acting without compulsion, in an arm's-length transaction during the fiscal year." (Emphasis added.)

[5] ORS 308.425 provides, in part:

"(1) If, during any tax year, any real or personal property is destroyed or damaged by fire or act of God, the owner * * * may apply to the tax collector for proration of the taxes imposed on the property for the tax year in which the property was destroyed.

"(2) Application for proration of taxes under subsection (1) of this section shall be made not later than the end of the tax year or 30 days after the date the property was destroyed or damaged, whichever is later.

"* * * * *

"(3)(b) For property that is damaged, the tax collector shall collect only one-twelfth of the taxes imposed on the property for the tax year, for each month or fraction of a month that preceded the month during which the property was damaged. For the month in which the property was damaged, and for each month of the tax year thereafter in which the property remains damaged, the tax collector shall collect that percentage of one-twelfth of the taxes imposed on the property that the real market value of the property before the damage bears to the real market value of the property after the damage. The assessor shall advise the tax collector of the value percentage required under this paragraph. The tax collector shall cancel any taxes not to be collected due to this paragraph."

value of the property reflect post-July 1 changes in the condition of the property. *Shatzer*, 13 OTR at 440-41. The department appeals that decision. *See* ORS 305.445 (direct Supreme Court review of tax court decisions and orders). This court reviews *de novo*. ORS 19.125(3).

The department argues that, in approving section 11b, the voters did not intend that a taxpayer would benefit from a reassessed value as a result of casualty damage to property or other physical alterations. Rather, the department asserts, only devaluations resulting from external, market-driven forces were intended to fall under the concept of "real market value." Thus, the department concludes, the legislature was carrying out the voters' intent in redefining "real market value".in ORS 308.205(1). Before reaching the central interpretative issue, we shall briefly review the primary features of Oregon's property tax laws, as relevant to our decision.

All real property and all tangible property, except as otherwise provided by law, is subject to property taxation. ORS 307.030(1). Before the adoption of section 11b, real property subject to taxation was identified and valued as of January 1 for the preceeding tax year beginning July 1. ORS 308.210(1) (1989); ORS 308.215(5) (1989); ORS 308.007(2). The full and complete record of all the properties valued on that date constituted the "assessment roll" of the county for the tax year. ORS 308.210(1) (1989). If a property was damaged or destroyed "by fire or act of God" between January 1 and July 1, the taxpayer could petition the assessor to reappraise the property as of July 1 for the assessment year beginning on that date. ORS 308.425(1) (1989). However, for whatever reason, damage to or destruction of the property *after* July 1 was ignored. Also, the law did not allow for a reappraisal for any other type of devaluation, such as a decline in the real estate market.

Ballot Measure 5 alters Oregon's property tax laws in two significant ways that are relevant here. First, the measure imposes a maximum allowable tax for each $1,000 of a property's "real market value."[6] Second, the measure

---

[6] Article XI, section 11b(1), provides:

imposes a "retrospective" method of tax assessment that gives taxpayers the benefit of an assessed value for the tax year as of the day during the tax year on which the value was the lowest. That feature is found in the measure's definition of "real market value," section 11b(2)(a), which provides:

" 'Real market value' is *the minimum amount in cash* which could reasonably be expected by an informed seller acting without compulsion, from an informed buyer acting without compulsion, in an 'arms-length' transaction *during the period for which the property is taxed*." (Emphasis added.)

The 1991 Oregon legislature passed several measures designed to implement Ballot Measure 5 and to integrate it with the existing property tax code. Or Laws 1991, ch 459. The new assessment date was changed from January 1 to July 1, the beginning of the tax year. ORS 308.210(1). The legislature amended ORS 309.100 to allow taxpayers to petition the county board of ratio review "for reduction of the real market value of property because of changes in the real market value of the property occurring after July 1 and on or

---

"During and after the fiscal year 1991-92, taxes imposed upon any property shall be separated into two categories: One which dedicates revenues raised specifically to fund the public school system and one which dedicates revenues raised to fund government operations other than the public school system. The taxes in each category shall be limited as set forth in the table which follows and these limits shall apply whether the taxes imposed on property are calculated on the basis of the value of that property or on some other basis:

"MAXIMUM ALLOWABLE TAXES
For Each $1000.00 of
Property's Real Market Value

| "Fiscal Year | School System | Other than Schools |
|---|---|---|
| 1991-1992 | $15.00 | $10.00 |
| 1992-1993 | $12.50 | $10.00 |
| 1993-1994 | $10.00 | $10.00 |
| 1994-1995 | $ 7.50 | $10.00 |
| 1995-1996 | $ 5.00 | $10.00 |

and thereafter

"Property tax revenues are deemed to be dedicated to funding the public school system if the revenues are to be used exclusively for educational services, including support services, provided by some unit of government, at any level from pre-kindergarten through post-graduate training."

before June 30," ORS 309.100(2), thus allowing a retrospective look to determine the minimum value of the property during the tax year.

The dispute in this case turns on the legislature's enactment of ORS 308.205(1), which provides:

> "Real market value of all property, real and personal, *as the property exists on the date of assessment*, means the minimum amount in cash which could reasonably be expected by an informed seller acting without compulsion from an informed buyer acting without compulsion, in an arm's-length transaction during the fiscal year." (Emphasis added.)

That definition of "real market value" is essentially the same as the definition in section 11b, except for the added phrase: "as the property exists on the date of assessment." ORS 308.205(1).

The department argues that the added phrase in ORS 308.205(1) is necessary to fully implement the voters' intent. It asserts that section 11b, while requiring that the real market value be the one that is the lowest during the tax year, does not identify the "property" for which the lowest value is determined. Thus, it argues, the legislature was obliged to determine a date certain on which the identity, character, and value of the property could be established for taxation purposes, and that the legislature did so by taking a "snapshot" of the property as it exists on the assessment date, *i.e.*, July 1. The department asserts that, under ORS 308.205(1), depreciation resulting from an *external* factor, such as a change in the zoning laws or the discovery of a hazardous waste site in the neighborhood, would entitle a taxpayer to a reassessment for the tax year. On the other hand, the department asserts, depreciation resulting from casualty damage that physically alters the property, such as from a fire or an earthquake, would not entitle a taxpayer to a reassessed value, because the post-casualty property is not the same property that existed on July 1. Taxpayers respond that the remains of what was once their house, after it was substantially destroyed by fire, represents the unit of property subject to the assessment.

Our task is to determine whether the department's interpretation of the "real market value" of the property is consistent with the voters' intent in enacting section 11b. Principles of constitutional interpretation guide our inquiry.

In *Roseburg School District v. City of Roseburg*, 316 Or 374, 378, 851 P2d 595 (1993), the court explained:

> "In interpreting a constitutional provision adopted through the initiative process, our task is to discern the intent of the voters. The best evidence of the voters' intent is the text of the provision itself. * * * The context of the language of the ballot measure may also be considered; however, if the intent is clear based on the text and context of the constitutional provision, the court does not look further." (Citations and footnote omitted.)

*See also Ecumenical Ministries v. Oregon State Lottery Comm.*, 318 Or 551, 559, 871 P2d 106 (1994) (citing *Roseburg*); *PGE v. Bureau of Labor and Industries*, 317 Or 606, 612 n 4, 859 P2d 1143 (1993) (methodology applies "not only to statutes enacted by the legislature, but also to the interpretation of laws and constitutional amendments adopted by initiative or referendum").

In *Coultas v. City of Sutherlin*, 318 Or 584, 588-89, 871 P2d 465 (1994), the court stated:

> "In examining the text and context to determine the meaning of a constitutional provision adopted by the people by initiative or referendum, this court typically gives words of common usage their plain, natural, and ordinary meaning."

In determining whether the constitutional definition of real market value in section 11b requires the assessed value of property to reflect post-July 1 changes in the condition of the property, we look to the definition of the term "real market value" in section 11b(2)(a). Section 11b(2)(a) requires a retrospective look to determine the minimum amount for which the property could have been sold in an arm's-length transaction "during the period for which the property is taxed."

As did the Tax Court, we reject the department's view that the "property" is limited to whatever physically exists on the assessment date. Common understanding of the term

"property" does not support the department's theory that the "property" becomes a different property as a result of casualty damage. We conclude that the "property," as that term is used in section 11b, refers to a specific unit of realty (with or without improvements) that is identified by the appropriate authority by tax lot number or by some other method. Giving the terms in section 11b(2)(a) their plain, natural, and ordinary meaning, it is evident that that subsection was intended to be a complete policy choice that a property's real market value must reflect a depreciated value resulting from a casualty loss occurring at any time during the tax year. We agree with the Tax Court's reasoning:

> "Nothing in the definition suggests that changes affecting the value of the property are limited to external factors. Appraisers could not truly determine the 'minimum amount' if they must ignore fire damage that occurs 'during the period for which the tax is imposed.' Certainly, the market would not ignore it, and a knowledgeable buyer and seller would consider it in agreeing upon the sale price."
> *Shatzer*, 13 OTR at 440.

Moreover, neither the language of subsection 11b(2)(a), nor the broader context of section 11b, supports a conclusion that the voters intended to distinguish between different types of property devaluations or to delegate to the legislature the authority to make such distinctions.

We conclude that the department's construction of ORS 308.205(1) fundamentally would alter the clear intent of section 11b by excluding property owners who suffer casualty damage from the class of taxpayers entitled to benefit from the definition of "real market value" in section 11b. The legislature may not override the voters' will and give unintended meaning to section 11b by drawing the type of distinction between various property devaluations that the department advocates here. *See Bernstein Bros. v. Dept of Rev.*, 294 Or 614, 619, 661 P2d 537 (1983) ("The only power the legislature has is to pass legislation that aids or facilitates the purpose intended by the constitution."); *Veatch v. City of Cottage Grove*, 133 Or 144, 145, 289 P 494 (1930) (legislature cannot pass an act in contravention of constitution).

■ Despite the tension between the statutory and constitutional definitions of "real market value," however, it is possible to interpret ORS 308.205(1) in a way that does not offend section 11b. *See Bernstein Bros.*, 294 Or at 621 (statutes shall be interpreted to avoid constitutional problems). ORS 308.205(1) does provide for a "snapshot" of the property on the assessment date. However, the statute does not require a construction that only external, market-driven devaluations that do not alter the physical appearance of the property are to be considered for reassessment purposes. It is not inimical to the constitution to assess a property's value on July 1, the first day of the tax year, and to presume that that assessment will accurately reflect the lowest market value of the property during the tax year. Measure 11b mandates only that a taxpayer be given the opportunity to challenge that assessment with evidence of property devaluation from any cause based on events or facts that occur after July 1 of the tax year. ORS 309.100(2) provides that opportunity.

■ In sum, we hold that the constitutional definition of "real market value" in section 11b(2)(a) requires that the assessed value of taxpayers' property for the 1993-94 tax year be its value after it had been damaged by fire. Based on the foregoing analysis, we further hold that ORS 308.425 provides a remedy that is constitutionally inadequate to the extent that it only gives taxpayers a prorated remedy for devaluations resulting from fire or "act of God" during the tax year. Finally, we hold that ORS 309.100(2) provides a mechanism for appealing changes in value occurring during the tax year and that the board erred in rejecting taxpayers' petition on the ground that it lacked jurisdiction to reassess the value of taxpayers' property after the fire.

The judgment of the Tax Court is affirmed.