Argued and submitted January 10, decision of Tax Court reversed and case
remanded to that court for further proceedings September 19, 2002

FLAVORLAND FOODS,
now doing business as
New Season Foods, Inc.,
*Respondent,*

*v.*

WASHINGTON COUNTY ASSESSOR,
a political subdivision of the State of Oregon,
and Department of Revenue,
*Appellants.*

(OTC 4393; SC S47940)

54 P3d 582

Robert B. Rocklin, Assistant Attorney General, Salem, argued the cause and filed the brief for appellant Department of Revenue. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Elmer M. Dickens, Assistant County Counsel, Hillsboro, filed the brief for appellant Washington County.

David L. Canary, of Garvey, Schubert & Barer, Portland, argued the cause and filed the brief for respondent. With him on the brief was Richard Baroway.

LEESON, J.

## LEESON, J.

The Department of Revenue and Washington County Assessor (taxing authorities) appeal from a judgment of the Oregon Tax Court granting summary judgment in favor of Flavorland Foods (taxpayer). *Flavorland Foods v. Washington County Assessor*, 15 OTR 182 (2000). For the reasons that follow, we reverse the decision of the Tax Court and remand the case for further proceedings.

At issue is the meaning of the phrase "each unit of property in this state" in Ballot Measure 50 (1997). Measure 50 amended Article XI, section 11, of the Oregon Constitution.[1] The legislature referred Measure 50 to the voters to replace a property tax limitation measure that the voters had approved in 1996, which had been known popularly as Ballot Measure 47. As this court recently explained,

> "Measure 47 was a short-lived constitutional amendment aimed at closing what its supporters considered to be a significant loophole in the property tax limitation goal of Measure 5 [an amendment to the Oregon Constitution adopted in 1990]. Certain practical and technical difficulties in the application of Measure 47 led the legislature to propose, and the people to adopt, Measure 50 as its effective replacement."

*Shilo Inn v. Multnomah County*, 333 Or 101, 107 n 6, 36 P3d 954 (2001), *modified on recons*, 334 Or 11, 45 P3d 107 (2002) (citations omitted).

Measure 50 was superimposed on an ad valorem real-property tax system in the State of Oregon in which taxes were levied on a property's real market value. *See* ORS 308.232 (1995) ("All real or personal property within each county shall be valued and assessed at 100 percent of its real market value."). The assessment rolls set out separate values for the land and the improvements. ORS 308.215(1)(e), (f) (1995). However, real property generally was taxed as a whole. *See Shields v. Dept. of Rev.*, 266 Or 461, 470, 513 P2d

---

[1] Measure 50 repealed the prior version of Article XI, section 11, of the Oregon Constitution. Unless otherwise noted, all references to Article XI, section 11, are to that provision as amended by Measure 50. In this opinion, we use the terms "Measure 50" and "Article XI, section 11," interchangeably.

784 (1973) (with some exceptions, real property taxed as whole); ORS 307.010 (1995) (real property includes land itself and all buildings, improvements, machinery, equipment, or fixtures).

As amended by Measure 50, Article XI, section 11(1)(a), of the Oregon Constitution provides:

"For the tax year beginning July 1, 1997, *each unit of property in this state* shall have a *maximum assessed value* for ad valorem property tax purposes that does not exceed the property's real market value for the tax year beginning July 1, 1995, reduced by 10 percent."

(Emphasis added.) A property's maximum assessed value may increase by no more than three percent per year. Or Const, Art XI, § 11(1)(b). The property is taxed on the lesser of the maximum assessed value or the real market value. *See* Or Const, Art XI, § 11(1)(a) (establishing *"maximum* assessed value" as upper limit on assessment) (emphasis added); Or Const, Art XI, § 11(1)(f) ("Each property's assessed value shall not exceed the property's real market value."). Thus, if the real market value of property exceeds the property's maximum assessed value, then property tax is levied based on the maximum assessed value, not the real market value, of the property.[2]

As noted, the issue in this case is the meaning of the phrase "each unit of property in this state" in Article XI, section 11(1)(a). That issue comes to this court in the context of facts to which the parties have stipulated.

---

[2] In 1997, the legislature enacted ORS 308.142 (1997) and amended ORS 308.215 (1997) to implement Measure 50. Those statutes appeared to be contradictory in that ORS 308.142(1)(a) defined "property," for purposes of Article XI, section 11, as "[a]ll property included within a single property tax account * * *," while ORS 308.215(1)(e) and (f) provided for the listing of separate maximum assessed values for land and improvements. In 1999, the legislature again amended ORS 308.215, eliminating the requirement that the taxing authorities list separate maximum assessed values for land and improvements. *See* ORS 308.215(1)(e) and (f) (1999) (providing only for real market value of land and improvements). We conclude that none of those statutes is relevant to the interpretive issue presented here.

## I. FACTS

Taxpayer owns a parcel of commercial property in Washington County. Taxpayer and taxing authorities agree that, for 1995-96, the real market value of taxpayer's land was $455,000, and that the real market value of the improvements on that land was $3,267,820, for a total of $3,722,820. As noted above, 1995 is the year that forms the basis for calculating a property's maximum assessed value under the "cut and cap" provisions of Article XI, section 11(1)(a). In 1998-99, the tax year at issue here, the real market value of taxpayer's land had increased to $691,130, but the real market value of the improvements on that land had decreased to $2,080,030.

In the Washington County Assessor's view, Article XI, section 11(1)(a), created a cap on the value of the property as a whole. Thus, he concluded that, in calculating the maximum assessed value of taxpayer's property, Article XI, section 11(1)(a), permitted him to increase the assessed value of the land up to its real market value in 1998-99, so long as the total assessed value of all the property in taxpayer's tax account did not exceed the total maximum assessed value of all the property in the tax account for the 1997-98 tax year, plus three percent.

Taxpayer challenged the assessor's calculation of the maximum assessed value for its property before the Washington County Board of Property Tax Appeals (board). The board rejected taxpayer's challenge. Taxpayer then filed its complaint in the Tax Court. Before that court, the parties filed cross-motions for summary judgment. Taxpayer contended that Article XI, section 11(1)(a), required the assessor to calculate separate maximum assessed values for land and improvements. Under that approach, taxpayer argued, the maximum assessed value of its land for the 1998-99 tax year was $421,785, which was $270,345 less than the real market value of the land. Taxpayer did not challenge the assessed value that the assessor had assigned to its improvements for the 1998-99 tax year. The tax court granted summary judgment for taxpayer. *Flavorland*, 15 OTR at 185. Relying on its decision in *Taylor v. Clackamas County Assessor*, 14 OTR

504, *modified on recons*, 14 OTR 581 (1999), *decision withdrawn by order* January 11, 2000 (2000 WL 31987), the Tax Court held that the phrase "each unit of property in this state" in Article XI, section 11(1)(a), refers to each unit of *assessable* property. *Flavorland*, 15 OTR at 184-85. Because land and improvements are assessed separately, the Tax Court concluded, Article XI, section 11(1)(a), requires separate maximum assessed values for land and improvements. *Id.*

## II. ANALYSIS

On review, taxing authorities contend that the phrase "each unit of property in this state" in Article XI, section 11(1)(a), means "all property under one property tax account, including land and improvements." Taxpayer argues that the phrase "each unit of property in this state" refers to land and improvements separately. To resolve the parties' dispute, we must construe Article XI, section 11(1)(a). This court recently summarized the methodology that it employs when interpreting an initiative measure:

> "When we interpret either initiated or referred constitutional provisions, we attempt to discern the intent of the voters. *Stranahan v. Fred Meyer, Inc.*, 331 Or 38, 56-57, 11 P3d 228 (2000). That is so because, 'with respect to [such] provisions, it is the people's understanding and intended meaning of the provision in question * * * that are critical to [this court's] analysis.' *Id.* at 57. The best evidence of the voters' intent is the text of the provision itself. *Ecumenical Ministries v. Oregon State Lottery Comm.*, 318 Or 551, 559, 871 P2d 106 (1994); *Roseburg School Dist. v. City of Roseburg*, 316 Or 374, 378, 851 P2d 595 (1993). If the voters' intent is clear after consideration of text and context, then the court's inquiry is over. *Ecumenical Ministries*, 318 Or at 559. The court, however, will not lightly conclude that the text is so clear that further inquiry is unnecessary. If any doubt remains, the court will consider the history of an initiated or referred constitutional provision in an effort to resolve the matter. *Id.*"

*Shilo Inn*, 333 Or at 116-17 (brackets and ellipsis in original). We begin with the text of the phrase "each unit of property in this state."

## A. *Text*

■     When interpreting the text and context of a constitutional amendment adopted by initiative or referendum, this court typically gives words of common usage their plain, natural, and ordinary meaning. *See Ester v. City of Monmouth*, 322 Or 1, 9, 903 P2d 344 (1995) (so stating).

Article XI, section 11, does not state what is meant by the phrase "each unit of property in this state," and it does not define any of the words in that phrase. Neither does the phrase "each unit of property in this state" have an established legal meaning. We thus begin our interpretive analysis by determining the plain, ordinary meanings of the words of common usage in the phrase in question. *Id.* We begin with the central term, "property," which, in this context, is

> "**2 a :**   something that is or may be owned or possessed : WEALTH, GOODS; *specif* a piece of real estate * * * **c :** something to which a person has a legal title : an estate in tangible assets * * *[.]"

*Webster's Third New Int'l Dictionary* 1818 (unabridged ed 1993). That definition makes clear that the word "property" refers to a general class of things that can be owned. There is no dispute that, in this context, "property" refers to real estate.

We turn to the words "unit of," which modify the word "property." The term "unit" has the following potentially relevant definitions:

> "**2 a :**   a single thing * * * that is a constituent and isolable member of some more inclusive whole : a member of an aggregate that is the least part to have clearly definable separate existence and that normally forms a basic element of organization within the aggregate ‹the township in the usual [unit] of government› ‹the family as the basic [unit] of society› * * *[.]"

*Id.* at 2500. Reading the definition of "unit" together with the definition of "property," a "unit of property" is the "constituent and isolable member" or "the least part to have clearly definable separate existence and that normally forms a basic element" of "something that is or may be owned or possessed," which, in this case, is real estate.

The definition of property that emerges from the plain, ordinary meaning of the words in the disputed phrase is broad enough to encompass both taxing authorities' and taxpayer's arguments regarding maximum assessed value under Article XI, section 11(1)(a). On the one hand, the unit that has a "definable separate existence" for purposes of ad valorem property taxation could be the parcel of real property which, as noted above, includes both land and improvements. That perspective supports taxing authorities' contention that the phrase "each unit of property in this state" refers to all the property contained in an individual tax account. On the other hand, taxpayer is correct that land and improvements each have a "definable separate existence" that can be owned or possessed. That perspective supports taxpayer's argument that, in adopting Measure 50, the voters intended that land and improvements shall have separate maximum assessed values. Because the disputed text plausibly supports both parties' interpretations, we conclude that the text itself does not assist us in resolving the question of what the voters intended when they adopted Measure 50.

B. *Context*

We turn to context, which includes other relevant constitutional provisions and case law from this court. *See Ecumenical Ministries*, 318 Or at 560 (first level of analysis includes provisions of same and related measures); *Stranahan*, 331 Or at 61-62 (context includes relevant case law).

1. *Other Provisions of Article XI, Section 11*

We begin with other provisions of Article XI, section 11. Taxpayer argues that Article XI, section 11(1)(c), provides evidence that the voters intended the phrase "each unit of property in this state" to refer separately to land and improvements.

Article XI, section 11(1)(c), creates a ratio method for valuing property in some circumstances. It provides:

"Notwithstanding paragraph (a) or (b) of this subsection [described above], property shall be valued at the ratio of average maximum assessed value to average real market value of property located in the area in which the

property is located that is within the same property class, if on or after July 1, 1995:

"(A)  The property is new property or new improvements to property;

"(B)  The property is partitioned or subdivided;

"(C)  The property is rezoned and used consistently with the rezoning;

"(D)  The property is first taken into account as omitted property;

"(E)  The property becomes disqualified from exemption, partial exemption or special assessment; or

"(F)  A lot line adjustment is made with respect to the property, except that the total assessed value of all property affected by a lot line adjustment shall not exceed the total maximum assessed value of the affected property under paragraph (a) or (b) of this subsection."

Taxpayer argues that, "[i]n light of the 'exception value' structure" in Article XI, section 11(1)(c), "it is inconceivable" that the voters intended maximum assessed value to be calculated with respect to a parcel of property as a whole. As an example, taxpayer notes that, if "property" refers to land and improvements collectively, then Article XI, section 11(1)(c)(A), would authorize a tax assessor to revalue both land and improvements when new improvements alone are added to a property. Similarly, if "property" refers to land and improvements collectively, then Article XI, section 11(1)(c)(B), which permits alternative valuation when "property" is partitioned, would permit revaluation of both land and improvements when the partition involves only the land. Taxpayer provides additional examples under Article XI, section 11(1)(c), all of which, it contends, lead to the same conclusion, namely, that Article XI, section 11(1)(c), makes clear that the voters could not have intended the phrase "each unit of property in this state" to mean all the property in a tax account. Taxpayer apparently believes that that is so because taxing authorities' understanding of the phrase does not yield as much reduction in ad valorem property taxes as does taxpayer's proffered meaning of the phrase.

Taxpayer's arguments under Article XI, section 11(1)(c), do not advance the analytical effort here, because those arguments *assume*, rather than *demonstrate*, the voters' intent in adopting the phrase "each unit of property in this state" in Article XI, section 11(1)(a). Taxpayer describes the effects that it believes will result if the phrase "each unit of property in this state" means all the property in a property tax account. However, without additional textual evidence that the voters did not intend *those effects*, taxpayer's argument does not provide contextual evidence that the voters intended the phrase to refer to land and improvements separately.

## 2. *Measure 47*

■ We turn to other relevant context, which includes the provisions of other related measures. Taxing authorities have identified two measures that, in their view, provide relevant context: Measure 47 (1996) and Measure 5 (1990). As noted earlier in this opinion, Measure 47 was the predecessor to Measure 50. Taxing authorities contend that Measure 47 is a vital part of the context of Measure 50 because both measures aimed generally at tax reduction and Measure 50 was adopted "in the historical and legal shadow" of Measure 47. Section 11g(1) of Measure 47 provided:

> "Except as provided in subsections (3), (4), and (5) of this section, the *ad valorem property tax on each property* for the tax year 1997-98, excluding the portion of the tax that is levied to pay bonded indebtedness or interest thereon, shall not exceed the lesser of the following: (i) the ad valorem property tax on the same property for the tax year ending June 30, 1996, reduced by ten percent (10%), or (ii) the ad valorem property tax on the same property for the tax year ending June 30, 1995."

(Emphasis added.) Taxing authorities argue that the phrase "each property" in Measure 47 unambiguously referred to all the property in a property tax account, because property taxes never have been calculated on the individual components of a property tax account. Although Measure 50 adjusted the *manner* in which tax relief is achieved, taxing authorities continue, Measure 47 provides evidence that the

voters intended to apply the limitation on taxes in Measure 50 to property as a whole.

Taxpayer disagrees that Measure 47 is relevant context for interpreting the voters' intent in Measure 50. According to taxpayer, Measure 47 sought to achieve property tax relief "by limiting the amount of the *tax* as applied to the whole property tax account." (Emphasis in original.) Measure 50, by contrast, "attacked the *assessed value component* of the tax equation," not the tax itself. (Emphasis in original.)

Taxing authorities are correct that Measure 47 has a close enough relationship to Measure 50 to provide relevant context. However, the text of Measure 47, without more, supports neither party's argument in this case. That is so, because Measure 47 used the phrase "each property" in describing property to be *taxed*. Measure 50, by contrast, used the phrase, "each unit of property in this state" in referring to the maximum *assessed value* of property. We agree with taxpayer that, standing alone, the text of Measure 47 does not help to explain the voters' intent regarding the meaning of the phrase "each unit of property in this state" in Measure 50.

### 3. *Measure 5*

■     We turn to taxing authorities' argument regarding Measure 5 as context for understanding the voters' intent regarding Measure 50. Measure 5, which the voters approved in 1990, became Article XI, section 11b, of the Oregon Constitution. *See Shilo Inn*, 333 Or at 105 n 2 (explaining history of Measure 5). There is a close link between Article XI, section 11b, and Measure 50, which, as noted, became Article XI, section 11. Indeed, Article XI, section 11, which is at issue in this case, makes more than 10 references to provisions of Article XI, section 11b. *See, e.g.*, Or Const, Art XI, §§ 11(3)(a)(A), 11(3)(a)(B), 11(3)(h), and 11(5)(b)(B) (referring to section 11b). Article XI, section 11, also provides that the term "real market value" shall have the same meaning under Article XI, section 11, and Article XI, section 11b. *See* Article XI, § 11(11) (so stating).

In April 1997, the month before the voters adopted Measure 50 in a special election, this court held that the word

"property" in Measure 5 means "a specific *unit of realty (with or without improvements)* that is identified by the appropriate authority by tax lot number or by some other method." *Shatzer v. Dept. of Rev.*, 325 Or 211, 219, 934 P2d 1119 (1997). The voters thus were on notice when they adopted Measure 50 that this court had interpreted the word "property" as being synonymous with the phrase "unit of realty," with or without improvements, that is identified by tax lot number or by some other method.

Taxpayer disagrees that this court's interpretation of the word "property" in *Shatzer* properly is considered as part of the context in seeking to understand the voters' intent in Measure 50. For that proposition, taxpayer relies on the following statement in *Stranahan*:

> "Our first level of analysis under *Ecumenical Ministries* also includes relevant case law interpreting Article IV, section 1. *See Coultas[ v. City of Sutherlin*, 318 Or 584, 589-90, 871 P2d 465 (1994)] (examining earlier case law construing initiated constitutional amendment *in question*)."

331 Or at 61 (emphasis added). According to taxpayer, the phrase "in question" in the parenthetical explanation of *Coultas* means that the *only* case law from this court that is relevant context for interpreting an initiative measure is case law interpreting the *same* initiative measure. Taxpayer concludes that, because *Shatzer* interprets Measure 5, not Measure 50, *Shatzer*'s holding regarding the meaning of "property" in Measure 5 has no relevance in seeking to understand the intent of the voters in Measure 50.

Taxpayer misreads *Stranahan*. In a footnote immediately following the portion of *Stranahan* quoted above, on which taxpayer relies, the court stated: "The first level of analysis also includes context, *including related constitutional provisions that were in place when the provision in question was adopted*." *Stranahan*, 331 Or at 62 n 15 (emphasis added). Constitutional provisions or amendments that are created through either legislative referral or initiative petition are adopted by the people against the backdrop of an existing constitutional framework. *Id.* at 57. That framework includes this court's interpretation of related constitutional provisions.

Measure 5 was in place as Article XI, section 11b, when the voters approved Measure 50 and, as we have explained above, Measure 5 and Measure 50 are closely related. We conclude that both the text of Measure 5, and the interpretation of the word "property" in Measure 5 in *Shatzer*, provide context that is helpful in determining the voters' intent when they adopted the phrase "each unit of property in this state" in Measure 50. We agree with taxing authorities that Measure 5, and this court's holding in *Shatzer* that the word "property" means "unit of realty," with or without improvements, that is identified by a tax lot number or by some other method, suggests that the voters intended "each unit of property in this state" in Measure 50 to refer to all the property in a property tax account. *See* ORS 308.245 (1995) (each land parcel subject to assessment assigned tax lot or account number).

### 4. *ORS Chapter 308*

Finally, taxpayer contends that tax statutes in effect when the voters adopted Measure 50, particularly those in ORS chapter 308, provide relevant context and support taxpayer's interpretation of the phrase "each unit of property in this state." Specifically, taxpayer argues that, under ORS 308.215, land and improvements have been treated as separate parts of property for assessment purposes. *See* ORS 308.215(1)(e), (f) (1995) (providing that, for each parcel of real property, assessor shall set down in assessment roll assessed value of land and assessed value of improvements). For decades, those separate assessed values have appeared on the tax bills that taxpayers receive. Accordingly, taxpayer concludes, when they adopted Measure 50, the voters were aware that the tax rolls include separate entries for the values of land and improvements. Moreover, the voters also were aware that taxpayers may appeal the real market values of land and improvements separately. *See Nepom v. Dept. of Rev.*, 272 Or 249, 256, 536 P2d 496 (1975) (holding taxpayer entitled to challenge value of improvements only without putting value of land at issue).[3] It follows, taxpayer

---

[3] We note that, in *Nepom*, the court did not define the word "property" and did not refer to land and improvements as "units" of property. Instead, the court in *Nepom* assumed that the "unit" of property was the parcel as a whole. *See* 272 Or

argues, that the voters intended the phrase "unit of property" to refer to land and improvements separately. Taxing authorities respond that the connection between the statutory form in which the assessment roll must be prepared and Measure 50, which limits taxes on real estate, is too remote to provide meaningful insight into the voters' intent in adopting Measure 50.

We agree with taxing authorities. Taxpayer reads too much into the requirement in ORS 308.215(1) (1995) that the tax rolls include separate values for land and improvements. Nothing in ORS chapter 308 referred to land and improvements as "units."[4] Moreover, the statutes governing the form of the assessment rolls also required the assessor to include on the assessment role "[t]he total assessed value and real market value of each parcel of real property assessed." ORS 308.215(1)(i) (1995). We believe that, to the extent that the voters considered those statutes, it is just as likely that they intended the phrase "each unit of property in this state" to refer to the total assessed value for each parcel of real property assessed, ORS 308.215(1)(i) (1995), as it is that they intended that phrase to refer to individual assessed values, ORS 308.215(1)(e), (f) (1995).

Our review of the relevant context of Article XI, section 11(1)(a), suggests that the voters most likely intended the phrase "each unit of property in this state" to refer to all the property in a property tax account rather than to land and improvements separately. We turn to a consideration of the history surrounding the enactment of Measure 50.

## C. *History*

In examining the history of a referred measure, this court considers relevant materials contained in the voters' pamphlet, such as the ballot title and the explanatory statement. *Shilo Inn*, 333 Or at 129-30 (so indicating). We turn to the relevant materials regarding the history of Measure 50.

---

at 255 ("We appreciate that some property, particularly residential, is valued in the marketplace *as a unit*.") (emphasis added).

[4] The word "unit" in ORS 380.215(1)(g) (1995) refers to condominium "units" under ORS 100.005 to 100.910.

1. *Ballot Title and Estimate of Financial Impact*

The ballot title for Measure 50 does not mention the phrase "each unit of property in this state." Neither does the ballot title indicate that approval of Measure 50 would require county tax assessors to calculate separate maximum assessed values for land and improvements in each property tax account. Rather, the ballot title describes the measure as limiting the assessed value *of property* for tax purposes. The ballot title caption for Measure 50 states:

"AMENDS CONSTITUTION: LIMITS ASSESSED
VALUE *OF PROPERTY* FOR TAX PURPOSES;
LIMITS PROPERTY TAX RATES"

Official Voters' Pamphlet, Special Election, May 20, 1997, 5 (emphasis added). Similarly, the "yes" vote result statement states: "A 'yes' vote adopts amendment limiting property taxes through restrictions on assessed value *of property* and property tax rates." *Id.* (emphasis added). Finally, the ballot title summary explains the measure, in part, as follows:

"This measure changes current provisions relating to property taxation. The measure establishes the maximum assessed value *of property* in this state for the 1997-1998 tax year as 90 percent of *the property's* real market value in the 1995-1996 tax year and then limits any increase in maximum assessed value for tax years following 1997-1998 to three percent per year * * *. *This reduction will reflect Measure 47 cuts* by basing the cuts on the lesser of the 1995-1996 tax minus 10 percent or the 1994-1995 tax, adjusted for voter-approved levies * * *."

*Id.* (emphasis added). In describing Measure 50, the ballot title caption, the "yes" vote result statement, and the summary do not use the phrase "each unit of property in this state." Rather, they refer to the assessed value of "property." As we have explained above, the word "property" refers to the general class of things that can be owned, or, in the context of real property, to real estate in general. The use of the word "property" in the ballot title for Measure 50, rather than "each unit of property," suggests that the voters intended the phrase "each unit of property in this state" in Measure 50 to refer to all the property in a property tax account.

Reading the summary together with the "estimate of financial impact" bolsters that conclusion. The estimate of financial impact states that Measure 50 "replaces Measure 47 * * *." The summary, quoted above, states that the property tax reductions under Measure 50 "will reflect Measure 47 cuts." As we have explained earlier in this opinion, Measure 47 dealt with ad valorem property tax on "each property," and taxes on real property were not levied on the individual components of a property tax account. *See* ORS 307.010(1) (1995) ("real property" includes land and improvements).

## 2. *Explanatory Statement*

We turn to the explanatory statement for Measure 50 that the 1997 Legislative Assembly provided. That statement first notes that, in 1996, the voters approved Measure 47, which limited "the amount of property taxes that may be collected from *each parcel* of property." Voters' Pamphlet at 6 (emphasis added). The statement then explains that Measure 50 "would replace the percentage of tax limitations in Measure 47 with a reduction in the maximum assessed value *of property* for the 1997-1998 tax year * * *." *Id.* (emphasis added). Notably, the explanatory statement describes the tax limitations in Measure 47 as applying to "parcels" of property and then draws a correlation between those limitations and the limitations in Measure 50. Moreover, in describing the differences between Measure 47 and Measure 50, the explanatory statement does not use the phrase "each unit of property in this state." Voters who read the explanatory statement likely would have understood that the property tax limitation in Measure 50, like the limitation in Measure 47, applied to parcels of property. The explanatory statement thus suggests that voters intended the phrase "each unit of property in this state" to refer to all the property in a property tax account.

## 3. *Legislative Argument in Favor of Measure 50*

Finally, we turn to the legislative argument in support of Measure 50. That argument recommends a "yes" vote "to ensure you receive the property tax relief expected under Measure 47[.]" *Id.* at 7. The legislative argument in favor of Measure 50 also states that Measure 50 delivers the property tax relief that Measure 47 had promised to the voters, that

Measure 50 maintains "a 17% tax cut and a 3% growth cap as promised by Measure 47," that Measure 50 would save millions of dollars each year because it is easier and cheaper to administer than Measure 47 or Measure 5, and that Measure 50 maintains the funding priorities for schools and public safety that Measure 47 had promised. *Id.* Finally, the legislative argument in support of Measure 50 states that the measure "rolls assessed property values back to 90% of their 1995-96 level." *Id.*

Significantly, the legislative argument in support of Measure 50 does not mention the phrase "each unit of property in this state" or land and improvements as separate aspects of property. As we have explained above with respect to the explanatory statement, the use of the term "property," and the references to Measure 47 in the legislative argument in favor of Measure 50, are an indication that the phrase "each unit of property in this state" in Measure 50 refers to all the property in a property tax account.[5]

## III. CONCLUSION

In summary, we hold that the text of the phrase, "each unit of property in this state," in Article XI, section 11(1)(a), plausibly refers either to land and improvements separately, or to all the property in a property tax account. However, the context surrounding Measure 50 and the history of the measure clarify the voters' intent. We conclude that the voters intended the phrase "each unit of property in this state" to refer to all the property in a property tax account, which, in this case, includes both land and improvements. By requiring each unit of property in this state to have a maximum assessed value for purposes of ad valorem property taxes, Article XI, section 11(1)(a), provides that each property tax account shall have a maximum assessed value for purposes of ad valorem property taxes.

The decision of the Tax Court is reversed, and the case is remanded to that court for further proceedings.

---

[5] Taxpayer notes that the text of Measure 50, which contains the disputed phrase "each unit of property in this state," also appears in the voters' pamphlet. In taxpayer's view, the appearance of the phrase in the voters' pamphlet is historical evidence establishing the voters' intent. We already have examined the plain meaning of the text and found that it plausibly can be read to support both taxpayer's and taxing authorities' arguments.