No. 59          August 19, 2014          469

IN THE OREGON TAX COURT
REGULAR DIVISION

DEPARTMENT OF REVENUE
and Deschutes County Assessor,
*Plaintiffs,*

*v.*

RIVER'S EDGE INVESTMENTS LLC,
*Defendant.*

(TC 4962)

Plaintiffs Department of Revenue (the department) and Deschutes County Assessor appealed from a Magistrate Division decision as to the real market value of a convention center and land in Deschutes County. At trial, the department argued that while the subject property was in a tax account that did not include a neighboring hotel property, the relationship of the subject property to the nearby hotel and the common ownership of the two properties was of decisive importance in the valuation of the subject property. The court found that nothing in the language of the Oregon Constitution, the statutes or case law provided any support for determining the RMV of property in one tax account by reference to the RMV or any other characteristic of property in a different tax account. The court further found that the failure of the department to bear its burden would not result in a determination of a value by default in the way that occurs when a taxpayer is unsuccessful in challenging an existing roll value. The court determined that it would consider whether the RMV of the property asserted by taxpayer was reasonable. The court considered the income indicator to be the most reliable indicator of value in this situation and found that the department had not established that the elements employed by the witness for taxpayer were unreasonable. Accordingly, the court accepted as reasonable the value conclusion of taxpayer.

Trial was held March 11 through 14, 2013, in the courtroom of the Oregon Tax Court, Salem.

Douglas M. Adair, Senior Assistant Attorney General, Department of Justice, Salem, argued the cause for Plaintiff (the department).

Laurie E. Craghead, Deschutes County Counsel, Bend, argued the cause for Plaintiff Deschutes County Assessor (the county).

Mark G. Reinecke, Bryant Lovlien & Jarvis PC, Bend, argued the cause for Defendant (taxpayer).

Decision rendered August 19, 2014.

**HENRY C. BREITHAUPT, Judge.**

## I.   INTRODUCTION

This case is before the court for decision after trial. The tax year is 2008-09. Plaintiffs Department of Revenue and Deschutes County Assessor (collectively referred to as the department) appealed a decision in the Magistrate Division in favor of Defendant (taxpayer).

## II.   FACTS

The property in question is a convention center and related land (the subject property) located on the west side of the Deschutes River in Bend, Oregon. The subject property was constructed by taxpayer and completed in 2006.

The convention center on the subject property is a modern and fully functioning convention center with large kitchen facilities, meeting rooms, audio-visual equipment and all of the facilities needed for operation of a convention center. Personal property associated with the convention center is not at issue in this case.

Prior to construction of the subject property, taxpayer owned and operated, and still owns and operates, a large full-service hotel just north of the subject property. That facility is in a tax account separate from the tax account for the subject property. Taxpayer owns other property in the general neighborhood of the subject property, including a golf course.

The development and construction of the subject property occurred after significant dispute and litigation with governmental and private parties regarding land use restrictions and allowances related to the subject property and surrounding property owned by taxpayer. The litigation was settled pursuant to an agreement (the Development Agreement) that addressed the construction of the subject property and other issues related to surrounding property owned by taxpayer.

Pursuant to the Development Agreement, taxpayer could not proceed with other development near the subject property until a convention center was constructed. Construction of the convention center was a condition to the

receipt by taxpayer of certain other land use benefits related to other property in the neighborhood.

In their briefs, the parties have discussed in detail the question of whether the Development Agreement required continued maintenance and operation of the convention center. Unfortunately, the parties both approached this primarily by way of testimony of appraisers or others who clearly did not have expertise in analyzing legal agreements. Even when a witness was an attorney, the actual contractual provisions that could lead to an answer to the question of proper interpretation of the Development Agreement were not addressed. Neither party directly addressed the proper interpretation of the Development Agreement in briefs, even though the interpretation of such agreements is almost always a matter of law. This approach to the question falls short of being helpful to the court.

The valuation expert for the department considered only the cost indicator of value for the convention center. He did not consider the market indicator as he could identify no comparable sales to use to develop that indicator.

The valuation witness for the department considered the subject property to be "especial property" subject to valuation under OAR 150-308.205-(A)(3). That regulation provides that in the case of especial property, consideration is to be given only to the cost and income indicators of value.

Notwithstanding the provisions of OAR 150-308.205-(A)(3), the witness for the department did not consider the income indicator to the subject property, even though it is an income producing property. The witness reasoned that the subject property had to be valued with consideration to the economic benefits to the hotel located across the street from the center. He stated he did not have good data on the economic benefits enjoyed by the hotel and therefore could not develop an appropriate income indicator of value for the subject property.

Relying solely on the cost indicator of value, making a deduction for physical depreciation and making no deduction for functional or economic obsolescence, the valuation witness for the department concluded a value for the subject property of $16,700,000.

The valuation expert offered by taxpayer developed both an income indicator and a cost indicator of value for the subject property. The cost indicator produced a value that was far in excess of that indicated by the income indicator. This witness considered the difference in indicators to be attributable to functional or economic obsolescence that should be deducted from the value indicated by the cost indicator. Making that deduction, the witness reached a value conclusion of $2,668,000 for the subject property.

### III.  ISSUE

The issue is the real market value (RMV) of the subject property as of January 1, 2008.

### IV.  ANALYSIS

This case presents some issues that are apparently of first impression and some that are not. The department bears the burden of proof in this matter and the court will first discuss several issues connected with the approach taken by the department in the valuation of the subject property.

As noted in the summary of the facts, the subject property is in a tax account that does not include the neighboring hotel property. The department argues that the relationship of the subject property to the hotel and the common ownership of the two properties is of decisive importance in the valuation of the subject property.

The position of the department in this regard is, however, not supported by the statutes implementing the provisions of Article XI, sections 11(b) (Measure 5) or 11 (Measure 50), of the Oregon Constitution or the decisions of the Oregon Supreme Court. An understanding of this is aided by a brief summary of the operation of Measure 50.

Measure 50 and the legislation implementing it define the "maximum assessed value" (MAV) and the RMV of "property." RMV is defined in the constitution as being "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's length transaction occurring as of the assessment date for the tax year, as

established by law." Or Const, Art XI, § 11(1)(a)(A); *see* ORS 308.205(1) - (2).[1]

MAV is defined, for the tax year beginning July 1, 1997, as the "value for ad valorem property tax purposes that does not exceed the property's real market value for the tax year beginning July 1, 1995, reduced by 10 percent." Or Const, Art XI, § 11(1)(a). For subsequent years, the MAV "shall not increase by more than three percent from the previous tax year." *Id.* § 11(1)(b).

Consistently with the constitution, the assessed value (AV) is the lesser of the RMV or the MAV for "property." ORS 308.146(2). For purposes of determining whether the AV of property exceeds the property's MAV, "property" means, except for centrally assessed property not relevant here, "[a]ll property included within a single property tax account." ORS 308.142(1)(a).

The AV of any property can be determined only after comparing the RMV of the property and the MAV determined for the property. It therefore logically follows that the RMV of any property must be determined by reference to what the RMV of all property in a tax account is. Consideration of the RMV or MAV of property found in another tax account is, as a necessary conclusion, not permitted.

The foregoing discussion is fully consistent with the decision of the Oregon Supreme Court in *Flavorland Foods v. Washington County Assessor*, 334 Or 562, 54 P3d 582 (2002). In *Flavorland* the court concluded that the Measure 50 constitutional reference to "each unit of property" meant all property in a property tax account. *Id.* at 578.

Nothing in the language of the constitution, the statutes or the *Flavorland* decision provides any support for determining the RMV of property in one property tax account by reference to the RMV or any other characteristic of property in a different property tax account. Such a cross-account approach does not even appear to be necessary. Property tax accounts can be merged. ORS 308.162(1). If, as the department has suggested throughout this case,

---

[1] The court's references to the Oregon Revised Statutes (ORS) are to 2007.

it is important to consider the value of the convention center only in connection with the value of the hotel property, a merger of tax accounts might well be a preferred way of proceeding.

The department's expert therefore had no legal basis for taking into account, in the valuation of the convention center, what he considered to be augmented income at the hotel, produced by the presence of the convention center. That income could only be relevant to the value of the property in the tax account in which the hotel property was found. Further, his conclusion that the highest and best use of the convention center was operation in conjunction with the hotel is simply inconsistent with the account focus of Measure 50.

The department argues, however, that the relationship between the convention center and the hotel, together with the common ownership of both, makes the convention center "especial property." Even if that argument, based on the department's rule OAR 150-308.205-(A)(3), was correct, it could not produce a result inconsistent with the constitution, statutes and the decision in *Flavorland*.

Even within those limits, it is not clear what characterization of the convention center as "especial property" accomplishes. The rule itself simply states that where such property is involved, there will, by definition, be no market indicator of value. Rather, reliance will have to be placed on the income or cost indicators of value.

In this case, neither appraiser, in fact, developed a market indicator of value. The appraisers diverged in their approaches not because of differences in development of a market indicator, but rather in their consideration of an income indicator and their approaches to necessary depreciation to be taken into account in the development of the cost indicator.

The department's own rule directs consideration of both the income and cost indicators of value, even if a property is "especial" or to be valued in order to arrive at just compensation. And yet, the department's expert witness did not develop an income indicator. That is a serious departure

from appraisal practice. Appraisal Institute, *The Appraisal of Real Estate* 130 (13th ed 2008). If not adequately justified, it would lead the court to place no reliance on the appraisal of the expert who took the departure.

The justification given by the appraiser for the department for this departure from standard practice was that the income information he had for the convention center did not include income augmentation experienced by the hotel by reason of the existence and operation of the convention center. That explanation is deficient for two reasons.

As already discussed, the RMV of the convention center, and any other property in the same property tax account, must be determined independently of consideration of property (here the hotel) contained in another property tax account. That is a consequence of the application of the paramount provisions of Measure 50.

Further, even if Measure 50 did not compel separate consideration of the convention center and the hotel, basic valuation principles would. The department has concluded that one of the reasons that the convention center was constructed was that it would draw more business for the hotel. That conclusion is supported by the feasibility studies in the record done by the hotel owner in considering whether to build the conference center. It is, of course, also supported by common sense.

However, the fact that the convention center was expected to produce more business for the hotel does not mean that the marginal increase in business for the hotel, assuming it could be quantified, should be considered in the valuation of the convention center. Rather, if and to the extent that such expectations were fulfilled, the net operating income of the hotel property would be increased and consideration of that increase would be reflected in an increase in the income indicator of value for the hotel.

Indeed, consideration of increased revenue at the hotel would produce a significant risk of double-counting if that revenue were also used to value the convention center. The appraiser for the department recognized this. It is also the case that the statutes and rules of the department do not

contain a method for identifying the amount, if any, of hotel income attributable to the presence of the convention center. Nor do they contain a mechanism for considering such revenue only in the valuation of the convention center or the hotel, but not both.

The property tax statutes in Oregon contain a methodology for valuation of units of property that are interrelated and operated by one owner. *See* ORS 308.550 (relating to the assessment of so-called centrally assessed properties). Those provisions do not apply to property of the type presented in this case.

Another problem with the approach of the department is that it places great emphasis on who happens to be the owner of the property being valued. The premise of the department's argument is that the convention center and the hotel were, and will continue to be, owned by the same owner. However, the identity of an owner is not a factor that is taken into account in valuation of property. That is especially so where, as here, the record indicates that nothing requires the convention center and the hotel to remain under common ownership.

The court would also observe that the department's theory of valuation does not really depend on common ownership, notwithstanding the stress the department placed on that fact in this case. If the convention center were sold to a third party, the sale would very likely be at a price much below the cost of construction of the center. That is the conclusion of taxpayer. However, even under the department's view of matters, continued operation of the convention center would produce additional business for the hotel. That increase in business for the hotel would yield some return on or of the investment of the current owner in the convention center. In addition, whatever sales price that owner would realize on the sale of the convention center would yield a return on or of such investment.

Why, then, does the department insist on its approach to valuation, an approach that seeks to combine the hotel and the convention center? Once again, Measure 50 supplies an important piece of the answer to the question. Although the court did not ask counsel for the department

for the answer to this question, such counsel indicated what the answer would have been. In an opening exchange during the trial, counsel for the department conceded that the case would not be in court if the hotel and the convention center were in the same tax account.

The greatest problem for the department, and the revenue of Deschutes County, is almost surely produced by the fact that the MAV for property in the account in which the hotel is located is at a level such that increases in RMV of the hotel produced by the increased revenue attributable to the presence of the convention center will not produce additional property tax revenue. This would occur if the RMV of the property in the hotel tax account is already in excess of the MAV of such property. Additions to the RMV of the hotel would, in such a case, simply increase the amount by which the RMV exceeds the MAV. It would not, however, produce any additional AV.

This result, obviously unpleasant for the county, if it exists, appears to be a product of the fact that Measure 50 in most cases limits increases in the MAV of the property in the hotel account to three percent per year. That limit might not have applied, or may only partially have applied, if the convention center had been added into the property tax account in which the hotel is found. In such a case, under *Flavorland*, the RMV and MAV of all property in the account may be considered for purposes of applying Measure 50. However, that did not occur.

The problems created by Measure 50 for the county are, however, no reason to depart from fundamental appraisal principles or the consideration of the income method required by OAR 150-308.205-(A)(3). Because the expert witness for the department made such departures, the court places no reliance on his conclusion of value.

An appeal to this division results in a trial *de novo*. ORS 305.425(1). Further, the failure of the department to bear its burden does not result in a determination of a value by default in the way that occurs when a taxpayer is unsuccessful in challenging an existing roll value. The court

must, therefore, consider whether the RMV of the property asserted by taxpayer is reasonable.

The appraisal witness for taxpayer did consider both an income indicator and a cost indicator of value for the property. The value conclusion of that witness was $2,668,000, which number did not include personal property. Primary reliance was placed on the income indicator and the cost indicator was adjusted for obsolescence features so as to approximate the income indicator.

The property is an income producing property. It is in its early stages of operation and came onto the scene at one of the worst times in American economic history. The court considers the income indicator to be the most reliable indicator of value in this situation. The department has not established that the elements employed by the witness for taxpayer were unreasonable. Accordingly, the court accepts as reasonable the value conclusion of taxpayer's expert witness.

## V.   CONCLUSION

Now, therefore,

IT IS THE FINDING OF THIS COURT that the real market value of the subject property for the 2008-09 tax year was $2,668,000.