# IN THE OREGON TAX COURT

Edward PFANMULLER
*v.*
DEPARTMENT OF REVENUE
(TC 2764)

David E. Carmichael, Eugene, represented plaintiff.

Rochelle Nedeau, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for defendant rendered June 13, 1989.

**CARL N. BYERS, Judge.**

This appeal concerns the true cash value of the Adobe Motel and restaurant in Yachats. Defendant's Opinion and Order No. 86-3231 determined the value of the property to be $1,966,000 as of January 1, 1986. Plaintiff seeks to have that value reduced to $1,397,000.

The land in question consists of 9.15 acres lying between Highway 101 and the ocean. It has approximately 400 feet of oceanfrontage of volcanic basaltic rock with no beach or sand. The site is generally flat, well-landscaped, and is serviced by city utilities. The land use zone, R-4 (multi-family residential), restricts building heights to 30 feet. Motels and eating and drinking establishments are allowed in this zone.

The parties agree that the highest and best use of the subject land is its present use.

The original units of the motel were constructed in the early 1950s of locally made adobe bricks. Those units consisted of 24 oceanfront units, a duplex, and three units attached to a garage. A restaurant-lounge was added in 1962 and 12 more motel units were added in 1965. In 1984, the restaurant was extended ten feet. In 1985, plaintiff demolished ten of the original motel units and replaced them with 28 new units. This increased the motel to the current 59 units, including a manager's living unit. The 1985 construction also added a new lounge, a jacuzzi and sauna. The property is well-maintained and efficiently managed.

### Plaintiff's Case

Plaintiff's fee appraiser utilized all three approaches to value. In the cost approach he valued the land based upon bare land sales, which ranged from $47,547 per acre to $86,294 per acre. His bare land sales data was weak. The appraiser was unable to find sales of R-4 zoned property in Yachats although he did find and consider some offerings. Some of his comparable land sales were after the assessment date and some were not zoned for multiple residential use until after they were sold. Based on these sales and offerings, the appraiser arrived at an estimated value for the land of $549,000.

The appraiser estimated the replacement cost new of the motel units at $25 per square foot and the restaurant-lounge at $50 per square foot. He used a total square footage of 31,922, plus additions for the jacuzzi, sauna, fireplaces, kitchens, shop and garage and carports. The total gave a replacement cost new of $966,278. He allowed 30 percent depreciation on the older portion and added $40,000 for parking surface. This resulted in a depreciated cost for all the improvements of $890,324. Adding the land value of $549,000 to $890,324 gave an indicated value by the cost approach of $1,439,000 (rounded).

In the market comparison approach, plaintiff's appraiser found nine sales which he considered comparable to the subject on a per-unit basis. He used six of these sales, which gave him an unadjusted range of $20,220 to $29,178 per unit. He selected $23,000 as being appropriate for the subject.

When multiplied by the number of units (59) in the subject, this gave an indicated value for the motel units of $1,357,000. He then added the value of the restaurant, which he calculated to be $188,413. However, he deducted the value of the "business" of $185,200, resulting in an indicated value of $1,360,213 (rounded to $1,360,000).

Plaintiff's comparable sales left much to be desired. None of them were adjusted for increases in value to the assessment date in question. Three of the six sales were not oceanfront properties. Although the appraiser adjusted five of the sales based on his "judgment" for differences with the subject, only two of the adjustments appear to have any significance.

In the income approach, plaintiff's appraiser assumed 60 percent occupancy and a 50 percent expense ratio. Those assumptions led him to estimate a net income for the motel units of $277,801. He deducted management fees and reserves, which left a net income to capitalize of $222,888. Although he considered an overall capitalization rate indicated by his comparable motel sales, plaintiff's appraiser used a built-up approach to determine his capitalization rate. That is, he determined that 75 percent of the purchase of the motel would be financed by a mortgage at 12.27 percent. This left 25 percent to be financed by equity capital at 20 percent. He then added 1 percent for additional risk associated with a motel-restaurant property to derive an overall capitalization rate of 15 percent.

Dividing the net income from the 59 motel units of $222,888 by 15 percent gave him an indicated value of $1,485,920. To this he added the value of the restaurant-lounge and deducted the value of personal property. In his appraisal report he also deducted the value of the travel club. At the trial he agreed that the travel club should not have been deducted. Thus, his net indication of value by the income approach, after correcting for the travel club, was $1,505,173.

*Defendant's Appraisal*

In the cost approach, defendant's appraiser determined the value of the land only from an analysis of 12 oceanfront sales. Based on that analysis (trended up for time), the appraiser found that the first 100 feet depth of oceanfront

property sold for $1,470 per front foot. She also found that any excess land, up to a certain point, would sell for $5.70 per square foot. Thus, the subject land was valued by (1) multiplying its 400 feet of oceanfrontage by $1,470 per front foot ($588,000), (2) multiplying the next 95,000 square feet by $5.70 per square foot ($541,500), (3) multiplying the remaining 6.05 acres by $3,000 per acre ($18,150), and (4) adding a $1,625 development charge, all of which results in a total land value of $1,149,275.

Defendant appraiser's improvement costs were derived from a *Marshall Valuation Service* cost factor book. Those cost factors gave an indicated cost new of $1,547,480. Defendant's appraiser deducted 16.26 percent depreciation, or $251,620, resulting in a depreciated cost of $1,296,000 (rounded). She based her cost figures on approximately 39,000 square feet of improvements.[1] Her indicated value by the cost approach was $1,149,000 for land and $1,296,000 for improvements, for a total of $2,445,000.

In the market approach, the appraiser considered seven motel sales and extracted from those sales a per-unit cost. Adjusted for time, the sales gave her a range of $19,060 per unit to $39,340 per unit. She selected $34,000 per unit as appropriate for the subject and multiplied by the 59 units to obtain $2,006,000. Adding the value of the restaurant-lounge at either $299,510 (cost approach) or $255,000 (income approach) and deducting personal property of $109,000, gave her an indication by the market approach of either $2,196,510 or $2,152,000.

Defendant's appraiser also calculated a gross income multiplier (GIM) by dividing the sales price of each comparable sale by the estimated gross income from that comparable. She selected 4.50 as an appropriate GIM. Multiplying 4.50 by her estimated gross income for the motel of $513,720, gave an indication of value of $2,311,740. To this she added the alternative values of the restaurant-lounge and deducted the value of the personal property, resulting in a net indication of value of $2,502,000 or $2,458,000 (rounded).

---

[1] It is interesting to note that defendant's cost new (before depreciation) on the older units of the subject property ranges from $15,315 to $17,044 per unit, whereas defendant's cost new for the 28 units built in 1985 are approximately $25,830 per unit.

The court gives little weight to defendant's gross income multiplier because of the many differences between the subject and the comparable sales. The court also believes defendant's estimates of gross income for the comparable sales were low. A multiplier derived from the Lincoln Sands sale cannot be given any weight because the property was constructed new in 1985 and had no income history. A price per unit comparison may be of some value. The court is not persuaded that a GIM extracted from those sales is a reliable indication of value.

The court is also not persuaded that motel properties increased in value uniformly at the rate discerned and used by defendant's appraiser. Plaintiff's rebuttal evidence raised questions about the validity of some of the double sales defendant used. Plaintiff's appraiser testified as to other double sales of motels which did not indicate an increase in value. Even though there appears to have been some increase in value, the court is uncomfortable with defendant's significant time adjustment. It is based on a narrow sample and no other evidence of inflation or market trends was introduced.

For the income approach, defendant's appraiser estimated a net income of $231,170. This amount assumed 60 percent occupancy and a 45 percent profit ratio. Using a capitalization rate of 10.30 extracted from her comparable sales, she found an indicated value of $2,244,400 for the 59 motel units. After adding the alternative values of the restaurant-lounge and deducting the value of personal property, defendant's income approach gave an indicated value of either $2,435,000 or $2,390,000.

*Land Value Dispute*

The court cannot accept defendant's analysis of land values, at least as applied in this case. Just because the analysis was accepted by the court in another case gives it no particular credence or precedential value. As the Oregon Supreme Court pointed out in *United Telephone Co. v. Dept. of Rev.*, 307 Or 428, 770 P2d 43 (1989), such decisions are factual and have no precedential value.

The court is unable to determine whether land values in the Lincoln City area are significantly different from land values in Yachats. Nevertheless, there is some evidence which

would indicate defendant's analysis is not appropriately applied to the subject property. For example, the Tomlinson property, located in Yachats near the subject, has 300 feet of oceanfront and approximately 900 feet of depth, for a total of 7.06 acres. This property is comparable to the subject. It has been offered on the market for approximately five years at a sale price of $500,000. Plaintiff's evidence also indicates that the property was appraised in March of 1986 for $429,000 and has been offered for sale at that price with no takers. An offering price may be considered as some evidence of value. *Martin v. Dept. of Rev.*, 8 OTR 141, 148 (1979). Defendant's formula would assign a value to the Tomlinson property of approximately $880,000.

The Surfside Motel, defendant's comparable sale No. 6, has 760 feet of oceanfrontage. It also has approximately 45,760 square feet of "excess land" (at $5.70 per square foot). Applying defendant's formula to that property results in an indicated value of $1,378,032 for the land alone. That property was sold for $1,620,500 (defendant's time-adjusted price), which would leave just $242,468 attributable to improvements consisting of 85 motel units.

As plaintiff pointed out, defendant has no comparable sales which reflect land values of $1 million or more. The court is uncertain of the factors at work, whether it be size or that Yachats is significantly different from the Lincoln City area. Whatever the reason, the formula does not give a reasonable result when applied to the subject property. Although it is admittedly difficult to value oceanfront land on a per-unit basis, any formula or method must relate to the market. Based upon all of the evidence adduced by the parties, the court is persuaded that plaintiff's value for the land is more accurate. The court finds that the true cash value of the subject land is $550,000.

*Evaluating The Evidence*

The court finds itself with several questions which seem unanswerable from the evidence submitted at the trial. Plaintiff's 1985 remodeling and building costs seem low, yet plaintiff claims they were the actual costs incurred. That claim was unrefuted by defendant, which relied upon a cost factor book. Guides such as cost factor books are not as persuasive as market contracted services. In this case, the court is

left with the impression that neither party's total cost figures are very reliable.

In the market approach, plaintiff's appraiser chose some nonoceanfront sales. He did this to offset, in part, the higher value he sees in the Lincoln City area sales. It is unlikely that nonoceanfront motels can accurately be compared to oceanfront motels. On the other hand, while defendant's sales are all oceanfront, the court is uncomfortable with the straight equating of Yachats with the Lincoln City area. The sandy beaches of the area commonly known as the "Twenty Miracle Miles" are obviously more in demand than the coastline of Yachats. The sheer number of people and density of development demand such a conclusion.

*Capitalization Rate*

■    The overall capitalzation rate (OAR) reflects the relationship between the estimated income and the sales price of the property. Overall rates are derived from the market by dividing a property's net income by the sale price. Usually, appraisers must estimate the net income for a property since property owners keep that information confidential. The estimates of net income, as in this case, are key to developing an appropriate capitalization rate. It is difficult to compare the estimates of net income used by the two appraisers. Only two of the sales used are the same. However, plaintiff's estimates of income are consistently higher than defendant's.

Defendant's comparable sales reflect an overall range of 9.04 to 11.73, while plaintiff's comparable sales reflect a range of 12.04 to 16.2. Discarding the Lincoln Sands sale, defendant's average net income per unit is $2,485.16. Defendant's estimate of income for the subject is $3,985.76 per unit. If, in fact, they are comparable properties, there should not be such a disparity between the subject and the comparables (60 percent difference). Plaintiff's average net income per unit, based on its comparable sales, is $3,344 per year. Plaintiff's estimate for the subject is $3,778 per unit. The comparison of plaintiff's estimated incomes with defendant's is all the more significant when one remembers that plaintiff did not use all oceanfront motels. Presumably, nonoceanfront motels would have less net income and less value per unit than oceanfront motels.

The court recognizes that the incomes estimated are for the dates of the comparable sales while the appraisers are projecting 1986 income for the subject. Nevertheless, we can compare the estimated incomes for the two common sales, the Seahorse Motel and the Fireside Motel. For the Seahorse Motel, plaintiff estimated net income of $3,513 per unit, (OAR of 11.7 percent) while defendant estimated $2,890 per unit (OAR of 9.64 percent). On the Fireside Motel, plaintiff estimated $3,513 per unit (OAR of 12.46 percent) and defendant estimated net income of $3,147 per unit (OAR of 10.87 percent). The court concludes that defendant's estimates of net income for the comparable sales are low, thereby resulting in low capitalization rates.

In support of its OAR of 10.3 percent, defendant submitted Exhibit E, an extract from the quarterly report (1st quarter, 1986) of the Hospitality Investment Survey. This survey reported a decline in overall capitalization rates to 11.2 percent for motels for the first quarter of 1986. That figure, however, is a nationwide average. The last two pages of the extract show the averages by region. The average Northwest Region OAR for the first quarter 1986 (for hotels only) was 12.1 percent. The report does not show any OAR for northwest motels or resorts. However, the figures reported in the extract show that the OAR for motels is consistently higher than for hotels. Thus, it would follow that the OAR for northwest motels in the first quarter of 1986 should exceed 12.1 percent.

Plaintiff submitted a written offer from a real estate agency for sale of the Silver Surf Motel in Yachats. The offering price and the indicated net income in that offering reflects an overall capitalization rate of 12.75 percent.

The court finds that the correct overall capitalization rate in this case is 12.5 percent.

*Value of Restaurant-Lounge*

The restaurant-lounge is the one feature or facility not found in any of the comparable sales. Both appraisers agreed that the fair market value of the rent for the restaurant-lounge property is equal to 7 percent of the restaurant's gross income. Plaintiff's appraiser estimates the gross income at $425,000. He multiplied that figure by 7 percent, which

resulted in an annual rent of $29,750, less a 5 percent management fee ($1,487), for a net income to be capitalized of $28,262.[2] Defendant's appraiser appears to have used approximately the same gross income as the plaintiff but deducted 10 percent instead of 5 percent for management, with a net income of approximately $26,280. The difference in the indicated value by the parties is primarily the result of their different overall capitalization rates. Plaintiff used a capitalization rate of 15 percent to get a value for the restaurant-lounge of $188,413. Defendant used a capitalization rate of 10.3 percent to get a value of $255,000.

Plaintiff's actual restaurant-lounge gross income for 1985 was $486,712. Multiplying this figure by 7 percent results in gross rent of $34,069.84, less 10 percent management fee, gives a net rent to capitalize of $30,663. Dividing the net income of $30,663 by 12.5 percent results in a value of $245,304 for the restaurant-lounge. The court adopts this value.

*Personal Property*

Plaintiff deducts $169,160 as the "reported" value of personal property while defendant deducts $109,000. There was little evidence presented to aid the court in determining which amount is correct. In allocating the sales prices between personal and real property for his comparable sales, plaintiff's appraiser accepted the "buyer's" allocation as "the market." Those sales show a range of $821 to $2,564 per unit for personal property, with two of the five sales at $1,500 and the overall average at $1,477 per unit. Plaintiff's $169,160 represents $2,867 per unit for the subject, while defendant's $109,000 represents $1,847 per unit. The court accepts defendant's value for the personal property to be deducted.

*The Fireside Motel Comparable Sale*

In examining the evidence of market value, the sale of the Fireside Motel is the best comparable used by both sides. It is located close to the subject, which eliminates the issue of Yachats versus Lincoln City and Newport. The improvements

---

[2] Plaintiff's appraisal report shows a net income of $28,262, but the correct figure is $28,263. The court assumes that this and other like discrepancies are the result of typographical error.

of the Fireside are considered "equal" by the plaintiff and appear comparable to the subject. The Fireside sale price and estimated income are as of 1981. The evidence was that both income and price should increase somewhat by the 1986 assessment date. Consequently, that sale should give an indication of the lower limit of value for the subject.

Dividing the $1,100,000 sale price by 39 units in the Fireside Motel, discloses a value of $28,205 per unit. Multiplying this per-unit value by 59 gives an indicated value for the subject's motel units of $1,664,095. This must be increased for the value of the restaurant-lounge ($245,304) and decreased for personal property ($109,000), resulting in a total indicated market value of $1,800,406.

In the income approach plaintiff estimated the Fireside Motel income at $137,011 or $3,513 per unit. Multiplied by the subject's 59 units would result in an estimated income for the subject of $207,267. This level of income divided by a capitalization rate of 12.5 percent, gives an indicated value of $1,658,136. After adding the value of the restaurant-lounge ($245,304) and deducting the value of personal property ($109,000), this analysis results in a value of $1,794,440.

These would appear to the court to be the lower limits of value indicated by the Fireside Motel sale. Any trending of that sale to the assessment date in question would increase the indicated value for the subject. For example, if the Fireside figures were trended up 10 percent, the resulting indications of value would be in the range of $1,973,884 (income approach) and $1,980,446 (market approach).

*The Seahorse Motel Sale*

The other comparable sale used by both parties was the Seahorse Motel. A positive aspect of this sale is that it took place near to the assessment date in question. On the negative side, it is smaller and is located in Lincoln City. Dividing the sale price of $630,000 by the 21 units equals $30,000 per unit. Multiplying $30,000 by 59 gives a value of $1,770,000 for the subject motel units. Adding the value of the restaurant-lounge of $245,304 and deducting personal property of $109,000, gives a value of $1,906,304.

Plaintiff estimated a net income for the Seahorse Motel of $73,775 or $3,513 per unit. That level of net income

per unit would give the subject property $207,267 net income. That amount, capitalized by the 12.5 percent rate results in an indication of value for the 59 units of the subject of $1,658,136. Adding the restaurant-lounge and deducting the personal property results in a net indication by the income approach of $1,794,440.

*Yachats Inn*

The court has also considered the comparable sale used by defendant of the Yachats Inn. While that motel is admittedly in poor condition and is smaller than the subject, it is located in Yachats. That transaction produces a sales price of $22,500 per unit. Plaintiff adjusted this up for condition to $24,650 per unit. When multiplied by the subject's 59 units, this gives an indicated value of $1,454,350. To this is added the restaurant-lounge and deduct the personal property, for a total net value of $1,590,654.

*Correlation*

■ The appraisers for the parties agree that the income approach is the most reliable and, therefore, should be given the most weight. Plaintiff's estimated net income for the subject ($222,888), divided by 12.5 percent, plus $245,304 for the restaurant-lounge, and less $109,000 for personal property, gives a value of $1,919,408. Using that same approach but with defendant's estimate of net income results in an indication of value of $1,985,664.

If these are the most reliable indicators of value, and the appraisers agree they are, then there is little correlation to be done. These indicators are so close to the value plaintiff is appealing that any distinction between them would be meaningless. The value range of these indicators is supported by the Fireside Motel comparable sale. Accordingly, the court finds that the true cash value of the subject property as of January 1, 1986 is land, $550,000; improvements, $1,416,000; for a total of $1,966,000. Judgment will be entered in accordance with this opinion.

Costs to neither party.