IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

| | | |
|---|---|---|
| NATASHA DUNNE-BJORNSEN, | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 210097N |
| | ) | |
| v. | ) | |
| | ) | |
| DOUGLAS COUNTY ASSESSOR, | ) | |
| | ) | |
| Defendant. | ) | **DECISION** |

Plaintiff appealed the value of property identified as Account R26931 (subject property) for the 2020-21 tax year. A trial was held remotely on July 13, 2021. Plaintiff appeared and testified on her own behalf. Paul E. Meyer, Douglas County Counsel, appeared on behalf of Defendant. Kim Rinnert (Rinnert), Deputy Assessor, testified on behalf of Defendant. Plaintiff's Exhibits 1 and 2 were received without objection. Defendant's Exhibit A was received over Plaintiff's objections.[1] Plaintiff filed written closing arguments on August 17, 2021, including attachments in excess of 100 pages identified as Exhibits C and D.[2] Defendant filed written closing arguments on September 13, 2021, objecting to Plaintiff's Exhibits C and D as new evidence that is untimely and should not be considered. The court excludes Plaintiff untimely evidence (Exhibit C) but considers sources of law to the extent relevant (Exhibit D).

---

[1] Plaintiff objected to Exhibit A because it contained hearsay, such as a sales verification form provided to Defendant by the prior owner of the subject property. The court is not bound by the formal rules of evidence and considers Plaintiff's hearsay objection in weighing the evidence. *See* ORS 305.501(4)(a). Plaintiff also objected based on Defendant's alleged failure to fully respond to her public record request. Defendant responded that this court lacks jurisdiction over claims arising under public records laws.

[2] Plaintiff's Exhibit C is a property record and an article about how often bathrooms should be remodeled. Her Exhibit D is a Department of Revenue manual on maximum assessed value and case law; specifically: *Flavorland v. Washington County Assessor*, 334 Or 562, 54 P3d 582 (2002); *Hoxie v. Dept. of Rev.*, 15 OTR 322 (2001); and *Magno v. Dept. of Rev.*, 19 OTR 51 (2006).

## I. STATEMENT OF FACTS

A.  *Subject Property and Sales History*

The subject property was built in 1946 with three bedrooms and one bathroom. (Def's Ex A at 3.) It also has a general purpose building or shed that — at some point in time — was improved to include first a half bathroom and then a full bathroom and "office" space. Also, at some point in time, a covered porch was added to the subject property and the yard was improved. The precise details, as best can be determined, are discussed below in section B.

Rinnert testified that, following a nonjudicial foreclosure in 2016, the subject property was sold to Wells Fargo for approximately $54,000 in 2017, then deeded to Veterans Affairs. On November 15, 2017, Veterans Affairs listed the subject property for sale asking $59,000. (Def's Ex A at 14-15.) The RMLS listing described the subject property as a "1946 fixer" with a total size of 1,064 square feet. (*Id.* at 14.) It further stated:

> "Cute 1940's home. Some rooms have original fir floors. Living room has heating stove. Updated vinyl windows. Super cute kitchen with sliding door to back yard and wood door to side yard & carport area. Carport has half bathroom. Property was built prior to 1978 and lead based paint may potentially exist."

(*Id.*) The subject property sold on December 8, 2017, for $59,000. (*Id.* at 15.)

The subject property was listed for sale again on July 17, 2019, asking $179,000. (Def's Ex A at 22-23.) The RMLS listing described it as "1946 Updated/Remodeled" with a total size of 1,314 square feet with 1,064 square feet in the main house. (*Id.* at 22.) It stated that the "house was completely renovated," a

> "MOVE IN READY HOME with ALL NEW APPLIANCES to include washer/dryer. New electric panel, new paint, new flooring, new/remodeled bathrooms, 3 bed/1 bath inside home full bath (shower) and bed/multi-use room off garage, RV Parking back yard w/alley access & gate, fully fenced, window coverings, spacious kitchen w/great storage/glass fronts on some cabinets, covered back patio & MORE Owner is Licensed Real Estate Broker in Oregon."

(*Id.*) The subject property sold for $181,000 on September 4, 2019. (*Id.* at 23.) The 2019 buyer competed a "sales verification sheet" that he sent to Defendant in December 2019. (*Id.* at 3, 7.) According to the 2019 buyer, the sale involved a broker and it was a typical market sale. (*Id.*) He reported that the subject property was remodeled prior to sale and that the prior owner had "flip[ped] it." (*Id.* at 8.) The subject property was in "good" condition at the time of sale. (*Id.*)

The subject property was listed again on June 3, 2020, with an asking price of $209,900. (Def's Ex A at 35-36.) The description states, in part, "Buyer to due diligence, as county records differ." (*Id.* at 35.) Plaintiff purchased the subject property for $213,000 on July 31, 2020. (*Id.* at 4, 36.)

B.      *Worked Performed on Subject Property, Timeline*

Rinnert testified that the subject property remained in its original condition until it was sold following foreclosure in December 2017. (Def's Ex A at 3.) It "then went under a complete remodel, without permits[,] sometime between 2017 and 2019 when it [was] sold" again. (*Id.*) Defendant's appraiser inspected the subject property in March 2020 and observed the following:

- House was rewired and a new electric panel installed

- Remodeled bathroom had a new cabinet, sink, shower, and fixtures

- Kitchen had new floor coverings, new countertops, and new appliances

- House had new interior and exterior paint

- House had a new roof

- House had a deck and cover that was not reflected on the tax roll

- 240 square feet of the 440-square foot general purpose shed with a rough half bathroom was upgraded to living space (office) with electric, heat, laundry, and a bathroom

- Lot was "cleared, contoured, and reseeded"

(*Id.*) Rinnert testified that Defendant added 2020-21 exception value for the main house remodel, the office space in the shed, and the covered porch, each of which was new. (*See id.* at 48-52.)

Plaintiff disputes that the majority of the "new property" items identified by Defendant were, in fact, new. (*See* Ptf's Closing at 1.) Plaintiff maintains that they were already reflected in Defendant's records. (*See id.*) In support of that contention, Plaintiff offered documents received from Defendant in response to a public records request pertaining to the subject property dating back to 1995. (Ptf's Ex 1 at 1.) Plaintiff and Rinnert each testified concerning those exhibits and the meaning of various notes and acronyms contained therein.

- 1980s: Plaintiff testified that there was a $20,000 remodel. (*See* Ptf's Ex 1 at 7.) The exhibit is grid paper with slash marks over handwritten notes indicating a 1984 sale followed by a 1987 remodel. (*See id.*) The amount of $20,000 appears to pertain to the sale ("cash"), not the remodel. (*See id.*)

- 1990s: Plaintiff testified that the bathroom was remodeled at a cost or value of $64,500, maintaining that this is when the half bathroom was added, the office was created, and the yard was improved. (*See* Ptf's Ex 1 at 5.) The exhibit is grid paper with handwritten notes apparently from a 1997 reappraisal. (*Id.*) They describe the subject property as class 4+ and average quality, noting "Added new conc block foundation and ½ bath (listed $64,500)." (*Id.*) Rinnert testified that a rough plumbing for a half bathroom existed in Defendant's records before March 2020 and it was not new in 2020. (*See* Def's Ex A at 4.) Defendant's records mistakenly listed the half bathroom as located in the main house.

- 1990s: Plaintiff testified that wall heaters were added which are the same heating source

that existed as of January 1, 2020.  (*See* Def's Ex A at 15, 17, 19, 35 (pictures showing wall heaters); *see also id.* at 11 (heating is "BB" in document described as "2009 Last Appraisal").)  The pictures are from RMLS listings which Rinnert testified were not in Defendant's records until Defendant discovered them through trial preparation.

- 2004: Plaintiff testified that a fence existed and the yard was well-maintained.  (Ptf's Ex 1 at 17.)  The exhibit is a photo from 2004 showing the subject property had a fence, albeit a different one from subsequent photos.  (*See, e.g., id.* at 19 (2009 photo); Def's Ex A at 14-41 (RMLS photos).)  Plaintiff testified that the subject property roof with "light composite shingles" was unchanged.  (*See* Ptf's Ex 1 at 17.)  Rinnert testified that, as of January 1, 2020, the subject property had a "medium composite roof," which is higher quality.  Finally, a document titled "assessor building permit" and "2004 Maintenance" lists "PLMB" permit for "interior water piping and replace yard."  (*Id.* at 4.)  It states "N/C, new windows considered maint & repair, no M-50" and references a sale for $69,500 on October 21, 1999.  (*Id.*)  Rinnert testified that she did not know what the permit was for.

- 2008: Plaintiff testified that a permit was issued for stove removal.  (Ex 1 at 2.)  The permit states it was for "installation pellet stove."  (*Id.*)  Plaintiff testified that the deck was added in 2008.  (*See* Def's Ex A at 44.)  The exhibit is described as the March 11, 2020, "Field Appraisal Report."  (*See id.*)  It contains a reference to "FNWD," which Rinnert testified is a wood fence.  (*See id.*)  She disagreed that the deck existed before 2017.

- 2017: Plaintiff testified that photos show the covered porch existed.  (Def's Ex A at 20-21 (2017 RMLS photos).)  Rinnert testified that the deck or covered porch was not in

Defendant's records before March 2020.  (*See id.* at 51.)  The 2017 RMLS photos were not part of Defendant's records until they were discovered through trial preparation.

Plaintiff testified that a document described as "original appraisal data card" shows that the subject property previously included a shed with a washer and dryer.  (*See* Def's Ex A at 10-11 (referencing "GPB-5" with an area of "638").)  Rinnert testified that the data sheet is no longer accurate, which is why it has a red strike through it.  (*See id.*)

C.      *Exception Value Determination and Calculation*

The parties disagree on the character of work performed on the subject property.  Plaintiff characterizes it as "refurbishing" work that qualifies as general ongoing maintenance and repair (GOMAR).  She testified that the subject property remained in the same class, so it was not remodeled.  Nor was it rehabilitated, which involves bringing an unlivable property back to habitable status.  Additionally, Plaintiff disputes that much of the work performed on the subject property was "new" under ORS 308.153(3), asserting that it was already reflected in Defendant's records.  Plaintiff conceded that some items in the bathroom were new improvements, such as the bathroom cabinet with a cupboard and the relocated sink combined with the counter. (*Compare* Def's Ex A at 18 with 26 and 39.)  However, she maintains that the total value of the new items does not meet the threshold for exception value; rather, they are minor construction.

Defendant characterized the work performed on the subject property as remodeling, rehabilitation, or renovation, each of which qualifies for the new property or improvements exception.  Defendant noted that the sales verification letter from the prior owner indicated that the subject property was flipped or remodeled prior to sale.  Defendant disagrees that the new improvements were reflected in Defendant's records.  Prior to the March 2020 inspection, the subject property was last inspected in April 2009.  (*See* Def's Ex A at 42.)  During the March

2020 inspection, Defendant's appraiser found that substantial remodeling had been completed since its prior visit. Rinnert testified that the key question under ORS 308.153(3) is whether Defendant's records contain any express reference prior to March 2020 to items that Defendant added as exception value. (*See id.* at 48-52 (showing changes to records).)

Defendant concluded a total 2020-21 exception value of $32,593. (Def's Ex A at 53.) That amount included $9,246 for the main house, $11,203 for the office area in the shed, and $2,800 for the covered porch, less $1,227 for retirements from the shed. (*Id.*) Defendant revised its calculation at trial to $32,289 because the original calculation erroneously included a dishwasher. (*See* Def's Closing at 1.) Rinnert testified that she used the Department of Revenue's cost factor book to determine the value of individual items such as the covered porch. (*See* Def's Ex A at 48-51.) She testified that there is a difference between cost and value, but her calculations reflected value. Rinnert testified that her exception value calculation for the main house was derived by changing the percentage good, then comparing the depreciated replacement value of the structure before and after the remodel. (*See id.* at 54-57.)

D.      *Tax Roll, BOPTA, and Requested Values*

The subject property's 2020-21 tax roll real market value was $155,302. (Ptf's Compl at 2.) Defendant added exception value of $33,423, which the Board of Property Tax Appeals (BOPTA) reduced to $20,600. (*Id.*) Neither party challenges the real market value. Plaintiff requests that the exception value be removed entirely because the majority of items do not meet the definition of "new property" in ORS 308.153(3) and the value of any qualifying "new property" did not exceed the statutory threshold of $10,000 in one assessment year or $25,000 over five assessment years. *See* ORS 308.149(5), (6)(b) ("minor construction" does not result in an increase in maximum assessed value due to new improvements). Defendant requests that the

exception value be increased to $32,289. (Def's Closing at 1.)

## II. ANALYSIS

The issue presented is the subject property's 2020-21 exception value. To determine the 2020-21 exception value, the court considers 1) whether the subject property had new property or new improvements; and, if so, 2) the value of the new property or new improvements.[3]

The party seeking affirmative relief bears the burden of proof by a preponderance of the evidence. ORS 305.427.[4] Thus, Plaintiff bears the burden of proof with respect to her request that the 2020-21 exception value be reduced to $0 and Defendant bears the burden of proof with respect to its request to increase the exception value. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). Evidence that is inconclusive or unpersuasive fails to meet the burden of proof. *See Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990). "[T]he court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.

A.    *Maximum Assessed Value and Exception Value*

Article XI, section 11 of the Oregon Constitution, also known as Measure 50, was adopted by the voters in 1997. *AKS LLC v. Dept. of Rev.*, TC 5308 and 5309, 2019 WL 1768087 at *8 (Or Tax Apr 18, 2019). Before Measure 50 was adopted, property taxes were based on the

---

[3] Plaintiff also makes arguments concerning the omitted property statutes, namely that Defendant cannot look beyond five years for omitted property and there have been no significant changes to the subject property since 2012. (Ptf's Closing at 1.) The court makes three observations in response to Plaintiff's argument. First, Defendant did not assess omitted property in this case. Second, as discussed below, all of the new improvements were made after December 2017 with the possible exception of the covered porch. Third, the five-year limitation in the omitted property statute, ORS 311.216, pertains to the "number of prior years' back taxes that may be assessed, not to the age of the omitted property." *Rankin v. Multnomah County Assessor*, TC-MD 180080G, 2019 WL 6836008 (Or Tax M Div Jul 22, 2019).

[4] The court's references to the Oregon Revised Statutes (ORS) are to 2019.

property's real market value. *Id.* Measure 50 created the concept of maximum assessed value and taxed property on the lesser of real market value or maximum assessed value. *Id.*; *see also* Or Const, Art XI, § 11(1)(f). Maximum assessed value cannot increase more than three percent per year. Or Const, Art XI, § 11(1)(b). However, that three percent rule is subject to several exceptions, including for "new property or new improvements to property." Or Const Art XI, § 11(1)(c)(A); *see also* ORS 308.146(3)(a).

"'New property or new improvements' means changes in the value of property as the result of * * * [n]ew construction, reconstruction, major additions, remodeling, renovation or rehabilitation of property[.]" ORS 308.149(6)(a)(A). Those terms are further defined by rule. "'Remodeling' means a type of renovation that changes the basic plan, form or style of the property." OAR 150-308-0130(1)(d). "'Renovation' means the process by which older structures or historic buildings are modernized, remodeled or restored." OAR 150-308-0130(1)(e). "'Rehabilitation' means to restore to a former condition without changing the basic plan, form or style of the structure." OAR 150-308-0130(1)(f).

"'New property or new improvements to property' does not include changes in the value of the property as the result of * * * [g]eneral ongoing maintenance and repair [GOMAR]; or * * * [m]inor construction." ORS 308.149(6)(b). GOMAR "means activity that

"(A) Preserves the condition of existing improvements without significantly changing design or materials and achieves an average useful life that is typical of the type and quality so the property continues to perform and function efficiently;

"(B) Does not create new structures, additions to existing real property improvements or replacement of real or personal property machinery and equipment;

"(C) Does not affect a sufficient portion of the improvements to qualify as new construction, reconstruction, major additions, remodeling, renovation or rehabilitation; and

DECISION TC-MD 210097N                                                                                          9

"(D) For income producing properties is part of a regularly scheduled maintenance program."

OAR 150-308-0130(2)(a). "'Minor construction' means additions of real property improvements, the real market value of which does not exceed $10,000 in any assessment year or $25,000 for cumulative additions made over five assessment years." ORS 308.149(5). It "does not include general ongoing maintenance and repairs." OAR 150-308-0160(2).

To the extent new improvements to property exist, the value of the new improvements is multiplied by the changed property ratio[5] and added to the existing maximum assessed value. *See* ORS 308.153(1). The value of new improvements is "the real market value" of the new improvements less the real market value of any retirements. ORS 308.153(2)(a).

B.      *Distinguishing New Improvements From GOMAR*

In *Greenberg v. Multnomah County Assessor*, TC-MD 190105N, 2020 WL 3120381 at *4-6 (Or Tax M Div Jun 12, 2020), this court discussed at length both case law and administrative guidance concerning the difference between new improvements to property and GOMAR. This court has found the following items qualified as GOMAR: "cleaning and painting"; "refinishing cabinet doors and refinishing hardwood floors"; "removal of a bathtub"; "plumbing repair"; "replacement of a toilet and cracked sink"; and "installation of a larger kitchen sink"; and replacing kitchen cabinets. *Id.* Similarly, administrative guidance states, "GOMAR preserves the condition of the existing improvements. It allows improvements to achieve a useful life that is typical for the type and quality of the original improvements." *Id.* at *6. "GOMAR allows for the replacement of worn out components. A change to the modern

---

[5] That is "the ratio of average maximum assessed value to average real market value of property located in the area in which the property is located that is within the same property class." Or Const, Art XI, § 11(1)(c); *see also* ORS 308.153(1)(b).

equivalent of original materials for the same class of construction is allowed, such as the replacement of old aluminum frame windows with new vinyl windows that would be used in the same class of building today." *Id.* As an example of GOMAR, the administrative guidance lists "[r]eplacing worn out kitchen floor covering, appliances, and counter tops in a house." *Id.*

By contrast, new elements, upgrades, and items changed for personal preference not because they are worn out qualify as new property or improvements. *Greenberg*, 2020 WL 3120381 at \*4-6. When work is performed on a substantial portion of the property, it qualifies as renovation or rehabilitation rather than GOMAR. *Id.*; *see also Strom v. Dept. of Rev.*, 15 OTR 309 (2001) (finding work was renovation and remodeling where taxpayer performed "extensive work" on a home built in 1896 that had a "deteriorated \* \* \* condition and appearance" after use as a rental property); *see also Rankin v. Multnomah County Assessor*, TC-MD 180080G, 2019 WL 6836008 (Or Tax M Div Jul 22, 2019) (finding work was remodeling or rehabilitation where "work performed included adding a second bathroom and remodeling the main-floor bathroom, living area, and kitchen" on 1939-built home that had been used a rental property).

Here, some work performed on the subject property clearly qualifies as new property or new improvements: namely, the creation of living or office space in the shed and the addition of a covered porch that did not previously exist.[6] The work performed in the main house is more difficult to classify. Items such as painting or replacing worn out appliances fall within the definition of GOMAR whereas work performed in the main bathroom that changed the layout qualifies as new improvements. The subject property was built in 1946 and the 2017 listing described it as a "fixer," suggesting that it suffered from deferred maintenance and the work

_____

[6] Plaintiff disputes when the covered porch was added to the subject property, which the court addresses in the next section.

performed was renovation or rehabilitation. The extent of the work performed in the main house tends to indicate that it qualifies new improvements rather than GOMAR.

C.   *Whether New Improvements Were Included in Prior Tax Year Assessment*

Plaintiff argues that most of the work performed on the subject property was completed before the 2020-21 tax year and was assessed in prior tax years, thus it is not new property or new improvements under ORS 308.153(3). That statute states:

> "(3)(a) For purposes of this section, property shall be considered new property, or new improvements to property, for a tax year if the property:
>
>> "(A) Constituted an integral part of the land or improvements on the assessment date or the date of a site inspection by the assessor for appraisal purposes for any prior tax year;
>>
>> "(B) Has been continuously in existence since the prior tax year; and
>>
>> "(C) Was not included in the assessment of the land or improvements for any prior tax year.
>
> "(b) The following is evidence that the property was not included in the assessment of the land or improvements for a prior tax year:
>
>> "(A) There is no express reference to the property in the records of the assessor; and
>>
>> "(B) The assessor's valuation of the land or improvements of which the property is an integral part increases as a result of inclusion of the property in the assessment."

There is some question of when new improvements were made to the subject property; most likely, the improvements were made between the December 8, 2017, sale and the July 17, 2019, listing after the owner flipped the property. That is supported by RMLS listings of the subject property, describing it as a "fixer" in the 2017 and as "completely renovated" in 2019. The question is whether those improvements were expressly referenced in Defendant's records and assessed before the 2020-21 tax year.

Prior to its March 2020 inspection, Defendant last inspected the subject property in April 2009. Rinnert testified that the work performed on the subject property between 2017 and 2019 was done without permits, so Defendant was unaware of it at the time. Indeed, the only evidence of permits are a 2004 plumbing permit and a 2008 pellet stove permit. Having reviewed records provided by Plaintiff, the court is not convinced that any of the items identified as new property or improvements were reflected in Defendant's records prior to the 2020-21 tax year.

Although the subject property previously included a shed with rough plumbing for a half bathroom, it was not finished living space until after 2017. The 2017 RMLS listing described the subject as containing 1,064 square feet of living space whereas the 2019 RMLS listing described it as containing 1,314 square feet with "guest quarters with separate entry and private [bath]" in addition to the main living area. No evidence supports Plaintiff's allegation that the living space in the shed was added in the 1990s or even prior to 2017. Similarly, the main house was clearly renovated between 2017 and 2019 as demonstrated by the photographs provided; even if a remodel occurred in the 1980s, it would have been over 30 years old by the 2019 sale. There is some evidence that the covered porch existed prior to 2017. Plaintiff noted some older photos, including the 2017 RMLS listing photos, appear to show the covered porch. Rinnert testified that the 2017 RMLS photos were not part of Defendant's records and Defendant did not discover them until preparing for trial.

Having concluded that the subject property included new property or new improvements as of the 2020-21 tax year, the next question is the value of the property or improvements.

D.     *Real Market Value of New Improvements*

 "The value of new property or new improvements equals the real market value of the new property or new improvements reduced (but not below zero) by the real market value of

retirements from the property tax account." ORS 308.153(2)(a). Real market value "means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year." ORS 308.205(1). Real market value "shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue * * *." ORS 308.205(2). The three approaches to value that must be considered are: (1) the cost approach; (2) the sales comparison approach; and (3) the income approach. OAR 150-308-0240(2)(a); *see also Allen v. Dept. of Rev.*, 17 OTR 248, 252 (2003). Although all three approaches must be considered, all three approaches may not be applicable in each case. *Id.*

Here, Plaintiff maintains that the value of new property or new improvements is below the threshold for minor construction: either $10,000 in one assessment year or $25,000 over five assessment years. It is unclear which standard applies because the court is unable to determine if the new improvements were made in a single tax year or over two tax years. As discussed above, most improvements were made between December 2017 and July 2019, a period that spans two assessment years. The covered porch may have been added prior to 2017. Ultimately, Plaintiff failed to present evidence of value under any of the three approaches to value. Thus, Plaintiff did not meet her burden of proof that the 2020-21 exception value was $0.

Defendant appears to have relied on a version of the cost approach, making calculations using the Department of Revenue cost factor book. "The cost approach is 'particularly useful in valuing new or nearly new improvements' * * *." *Magno v. Dept. of Rev.*, 19 OTR 51, 55 (2006). An appraiser's competent application of the cost approach using the Department of Revenue cost factor book will ordinarily meet the preponderance of the evidence standard in ORS 305.427. *Martin v. Dept. of Rev.*, 8 OTR 141, 144-45 (1979). However, "cost factor books

are not as persuasive as market contracted services." *Pfanmuller v. Dept. of Rev.*, 11 OTR 225, 230 (1989); *see also Martin*, 8 OTR at 145 (finding the appraiser either ignored or overlooked actual market evidence from the listing of the subject property for several years without a sale).

Defendant determined that the new improvements to the subject property increased its real market value by $32,289, rounded. Defendant must prove that value by a preponderance of the evidence because BOPTA reduced it to $20,600. Defendant's appraiser, Rinnert, appears to have performed a competent valuation using the Department of Revenue cost factor book and the court received no evidence to rebut her calculations or to suggest that they were out of line with other market evidence such as actual costs or sales of similarly renovated properties. As a result, the court accepts Defendant's 2020-21 exception value calculation of $32,289.

## III. CONCLUSION

Upon careful consideration, the court concludes that the 2020-21 exception value of the subject property was $32,289. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied. The 2020-21 exception value of property identified as Account R26931 was $32,289.

Dated this _____ day of February 2022.

_____
ALLISON R. BOOMER
PRESIDING MAGISTRATE

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by __mailing__ to: 1163 State Street, Salem, OR 97301-2563; or by __hand delivery__ to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within __60__ days after the date of this Decision or this Decision cannot be changed. TCR-MD 19 B.*

*Some appeal deadlines were extended in response to the Covid-19 emergency. Additional information is available at https://www.courts.oregon.gov/courts/tax This document was signed by Presiding Magistrate Allison R. Boomer and entered on February 15, 2022.*